IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| William M. McKown, | ) | Civil Action No.: 4:13-cv-982-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Symetra Life Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff William M. McKown ("McKown" or "Plaintiff") filed this action in the Court of Common Pleas for Horry County, South Carolina on March 11, 2013, asserting claims for (1) Breach of Contract, (2) Breach of Implied Contract, and (3) Bad Faith Refusal to Pay Life Insurance Benefits. *See* Compl., ECF No. 1-1. This matter is before the Court on Defendant's motion for summary judgment, filed on October 22, 2014. *See* Def.'s Mot., ECF No. 45. Plaintiff timely filed a response in opposition to Defendant's motion on October 31, 2014. *See* Pl.'s Resp., ECF No. 49. Defendant then filed a reply in support of its motion on November 10, 2014. *See* Def.'s Reply, ECF No. 50. For the reasons stated below, the Court grants in part and denies in part Defendant's motion.[1]

**FACTUAL BACKGROUND**

Plaintiff is the beneficiary of a universal life insurance policy ("the Policy") on the life of his father, Duncan McKown, with $100,000 in coverage. *See* Policy Excerpts, ECF No. 45-1 at 2. The Policy had an anniversary date of September 18. *See id.* The Policy included a "grace period" provision, however, which provided that "[a] grace period of 61 days will be granted if the cash value is not sufficient to cover the Cost of Insurance for the next following month." *Id.* at 6. However,

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court determined that a hearing was not necessary.

this provision warned that "[i]f such premium is not paid within the grace period, all coverage under the Policy will terminate without value at the end of the 61 day period." *Id.*

Plaintiff made a premium payment of $2,787.62 on September 15, 2014. *See* Phone Transcript, ECF No. 46-6 at 2–3.[2] On September 18, 2009, however, Defendant sent Plaintiff a "Universal Life Insurance Statement," which indicated that the cost of insurance deductions from September 18, 2009 to the next anniversary date was $9,233.76, and assuming no further premium payments, the Policy would remain active until October 18, 2009. *See* Statement, ECF No. 46-1 at 5. Defendant later explained that the $2,787.62 payment had been insufficient to fund the Policy for the year beginning September 18, 2009. *See* ECF 46-6 at 4.

On October 18, 2009, Defendant sent Plaintiff a Life Insurance Cash Value Insufficient Notice, which provided that all coverage under the Policy would cease on December 19, 2009, the end of the 61 day grace period, if the requisite premium payment was not received. *See* Notice, ECF No. 46-2 at 2. Defendant maintains, and Plaintiff does not appear to dispute, that this past due premium amount of $2,447.58 was not paid by December 19, 2009.

On December 21, 2009, Defendant sent Plaintiff a Lapse/Reinstatement Notice informing him that the 61 grace period had expired, and that coverage had lapsed effective December 19, 2009. *See* Notice, ECF No. 46-4 at 2. The Notice provided that, in order to reinstate the Policy, Plaintiff needed to submit an executed reinstatement application, a medical release, and the updated past due premium, which was now $3,986.57. *See id.* The Plaintiff sent a check for $3,986.57, and Defendant deposited it on February 1, 2010. *See* Scan of Check, ECF No. 49-1 at 4.

---

[2] Plaintiff authenticated the transcript of this phone call during his deposition. Dep. of William McKown, ECF No. 46-12 at 89:10–90:2. He maintains, however, that the transcript "cut off" and that there was some additional conversation at the end of the call. *See id.*

2

The insured passed away on February 9, 2010. *See* Discharge Summary, ECF No. 46-5. The parties dispute when Defendant received notice of the insured's death. Plaintiff stated in his affidavit that he called Defendant "on or about" February 19, 2010 to inform them that the insured had passed away. *See* Pl. Aff., ECF No. 49-1 at ¶ 14. Defendant, however, provided a copy of a letter sent to Plaintiff of March 17, 2010, which stated that its records show that Plaintiff telephoned the claims unit on February 23, 2010 to inform Defendant the insured had died. *See* Letter, ECF No. 46-10 at 3. Defendant also provided a copy of a letter dated February 22, 2010, which indicated Defendant was refunding the premium of $3,986.57 under separate cover. *See* Letter, ECF No. 46-13. The letter requested that Plaintiff "answer all of the questions on the enclosed health statement/HIPPA form, sign, date, and return the forms along with your premium payment of $3,986.57." *Id.* This letter did not mention anything about the insured being deceased. *See id.* Regardless, it is undisputed that Defendant refunded the premium amount via a check dated February 23, 2010, and mailed that check by letter dated February 24, 2010. *See* Check, ECF No. 46-8; Letter, ECF No. 46-11. Plaintiff states that he had "rejected" this refund and not negotiated this check. *See* ECF No. 49-1 at ¶ 18.

### SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

3

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, the moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id.*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989).

#### DISCUSSION

**I.   Breach of Contract, Bad Faith Refusal to Pay Life Insurance Benefits, Punitive Damages, and Attorney's Fees**

In its motion for summary judgment, Defendant argued that it was entitled to summary judgment on each of Plaintiff's three causes of action, as well as Plaintiff's demands for punitive damages and attorney's fees. In response, Plaintiff has only suggested and argued that "there is a question of fact as to whether the Defendant waived its alleged requirement for a Reinstatment Application and entered into an *implied contract for insurance* when it accepted and negotiated Plaintiff's reinstatement check." *See* ECF No. 49 at 1 (emphasis added). Plaintiff, therefore, has only set forth argument that summary judgment should be denied with regard to his implied contract claim. The Court therefore considers the other claims being without merit and conceded by Plaintiff, and Defendant entitled to summary judgment on those claims only.

**II.   Implied Contract**

As noted above, Plaintiff's sole argument is that Defendant's acceptance and retention of the reinstatement premium amount resulted in an implied contract for insurance, which the Defendant later breached. The Court finds that, although it is very close with regard to the remaining claim, there is a genuine issue of material fact.

Under South Carolina law, "[a]n implied contract, like an express contract, rests on an actual agreement of the parties to be bound to a particular undertaking." *Stanley Smith & Sons v. Limestone Coll.*, 322 S.E.2d 474, 477 (S.C. Ct. App. 1984). For an implied contract to be created, "[t]he parties must manifest their mutual assent to all essential terms of the contract in order for an enforceable obligation to exist." *Id.* Thus, Plaintiff must prove Defendant's "assent by conduct to all those

terms essential to create a binding contract." *Id.* As the Supreme Court of South Carolina has explained, however, "[i]t is for the jury to determine whether there was a contract and whether it was performed according to its terms." *Johnston v. Brown*, 357 S.E.2d 450, 452 (S.C. 1987) (citing *Quality Concrete Products, Inc. v. Thomason*, 172 S.E.2d 297 (S.C. 1970)).

Defendant presented evidence that it provided Plaintiff notice of the Policy's lapse, and the steps he would need to take to reinstate the Policy. First, Defendant sent Plaintiff the Lapse/Reinstatement Notice. As detailed above, this notice explained that coverage had lapsed, and provided that Plaintiff would have to submit an executed reinstatement application, a medical release, and the past due premium in order to reinstate the Policy. *See* ECF No. 46-4 at 2. Moreover, Defendant provided a transcript of a telephone conversation between Plaintiff and a representative of Defendant that took place on January 4, 2010. *See* ECF No. 46-6. During this phone call, Plaintiff indicated he thought that a previous payment, sent September 15, 2009, had been sufficient to bring the account up to date. *See id.* at 2–3. Defendant's representative, however, explained that this amount was insufficient to fund the Policy, and that the Policy had lapsed. *See id.* at 3–4. The representative noted that "we would need to receive an application completed to reinstate the policy." *See id.* at 5. As Defendant pointed out, Plaintiff's own expert agreed that Symetra told Plaintiff that he would need to submit a reinstatement application to reinstate the Policy. *See* Dep. of John J. O'Brien, ECF No 45-4 at 65:15–19, 68:13–17. Defendant admits that it received a check from Plaintiff in the amount of $3,986.57, which was the amount of premium quoted in the Lapse/Reinstatement Notice. *See* ECF No. 46-4; ECF No. 46-10. However, Defendant provided a copy of a letter dated February 22, 2014 where it indicated it was refunding these funds because the other information needed to reinstate the policy had not been submitted. *See* ECF No. 46-13.

Defendant maintains that it did not receive notice of the insured's death until February 23, 2014.  See ECF No. 46-10 at 3.

Plaintiff, on the other hand, states via his sworn affidavit testimony that he never intended the Policy to lapse, and that when he was informed it had lapsed, he immediately mailed a check for the outstanding premium amount.  *See* ECF No. 49-1 at ¶¶ 7–8.  Plaintiff avers that Defendant accepted and negotiated the check, *see* ECF No 49-1 at 4, and that he received no further communication from Defendant until after the insured's death, *see* ECF 49-1 at ¶¶ 9–10.  He maintains he received no indication that Defendant had refused the check or refused payment, or that the reinstatement was still pending or under investigation.  *See id.* at ¶ 11.  Thus, Plaintiff states he had "every reason to believe that Symetra had accepted the reinstatement check," and "that Symetra had in fact reinstated the policy."  *See id.* at ¶ 12.  He asserts that he called Defendant "on or about February 19, 2010" to inform them the insured had passed away and to make a claim.  *See id.* at ¶ 14.  Plaintiff avers that Defendant then attempted to issue a refund check to Plaintiff on February 23, 2010, mailed by letter dated February 24, 2010, after he had already made a claim for benefits.  *See id.* at ¶¶ 15–16.  Plaintiff maintains that he rejected the refund and continued to ask Defendant to pay the benefits, but Defendant refused.  *See id.* at ¶¶ 18–20.

Defendant has presented strong evidence that Plaintiff had notice of the necessary steps to reinstate the Policy.  Nevertheless, the Court finds that there is a genuine issue of fact as to whether an implied contract was created.  A reasonable jury could find that, by retaining the premium for approximately three weeks without any indication of any deficiencies or problems with the reinstatement, an implied contract of insurance was created.  If Plaintiff's version of events is to be believed, moreover, Defendant only attempted to refund the premium amount <u>after</u> it received notice

7

of the insured's death. The Court is aware that Defendant vehemently disputes this version of events. However, this is a classic example of a genuine issue of material fact. Because "[i]t is for the jury to determine whether there was a contract," *Johnston*, 357 S.E.2d at 452, the Court finds that summary judgment should be denied as to Plaintiff's implied contract claim.

## CONCLUSION

The Court has thoroughly reviewed the entire record, including Defendant's motion for summary judgment, Plaintiff's response in opposition, Defendant's reply in support of its motion, and the applicable law. For the reasons stated above, the Court grants in part and denies in part Defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion is **GRANTED** as to Plaintiff's claims for breach of contract and bad faith refusal to pay life insurance benefits, as well as Plaintiff's demands for punitive damages and attorney's fees. Defendant's motion is **DENIED** as to Plaintiff's claim for breach of implied contract.

**IT IS SO ORDERED.**

                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

Florence, South Carolina
November 20, 2014